IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILISSA MARIE MECK,** | ) | Case No. 3:20-cv-149 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| **COMMISIONER OF SOCIAL SECURITY,** | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff Milissa Marie Meck ("Meck") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court finds that the Commissioner's decision should be **AFFIRMED.**

I.   **Procedural History**

On November 21, 2017, Meck filed an application for SSI, alleging a disability based on the "combined effects" of multiple ailments, including migraines, seizures, carpal tunnel syndrome, sleep apnea, fibromyalgia, asthma, post-traumatic stress disorder, and more. (ECF No. 14 at 1). Meck's application was initially denied on March 12, 2018. (*Tr.* at 59). An Administrative Law Judge ("ALJ") held a hearing on April 8, 2019. (*Id.*). The ALJ issued a decision on May 21, 2019, finding that despite Meck's disability, Meck was capable of performing "light work" subject to various limitations. (*Id.* at 61-71). On June 3, 2020, the

Appeals Council denied Meck's request for review of the ALJ's Decision. (*Id.* at 4; *Tr.* at 1-7). Meck appealed to this Court, where the parties' motions for summary judgment are now pending.

## II. Issues Presented

Meck presents the following issues for review:

1. [Whether] [t]he ALJ erred by failing to fully account in the residual functional capacity ("RFC") for Plaintiff's migraine headaches. (ECF No. 14 at 1).

2. [Whether] [t]he ALJ's mental RFC finding is supported by substantial evidence and accounts for all mental limitations suffered by Meck. (*Id.*).

## III. Discussion

### a. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's Decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). "The Commissioner's findings of fact are binding if they are supported by substantial evidence." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Rels. Bd.*, 305 U.S. 197, 229 (1938)). Substantial evidence "is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Zirnsak*, 777 F.3d at 610 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). The Court "review[s] the record as a whole to determine

whether substantial evidence supports a factual finding." *Id.* (quoting *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Finally, the Court "review[s] the ALJ's application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).

    b. **Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process. 20 C.F.R. § 404.1520(a)(4). "First, the Commissioner considers whether the claimant is 'engaging in substantial gainful activity.'" *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1520(a)(4)(i)). If the claimant is engaging in substantial gainful activity, then the claimant is not disabled. *Id.* "Second, the Commissioner considers the severity of the claimant's impairment(s)." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). If at step two "the claimant's impairment(s) are either not severe or do not meet the duration requirement, the claimant is not disabled." *Id.* "Third, the Commissioner considers whether the claimant's impairment(s) meet or equal the requirements of one of the Commissioner's listed impairments." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). If at step three "the claimant's impairment(s) meet [or exceed] the requirements of a listed impairment, then the claimant is disabled." *Id.*

If the claimant's impairments do not meet or exceed a listed impairment "then the inquiry proceeds to the fourth step, where the Commissioner considers whether the claimant can return to her past work." *Id.* In determining whether the claimant can perform past relevant work, the claimant's residual function capacity ("RFC") is assessed. *Id.* "A

claimant's RFC measures 'the most [she] can do despite [her] limitations.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)) (alterations in original). In assessing the claimant's RFC, the "Commissioner examines 'all of the relevant medical and other evidence' to make its RFC determination." *Id.* (quoting 20 C.F.R. § 404.1545(a)(3)). If the claimant can perform past relevant work, then the claimant is found not to be disabled. *Id.* The claimant bears the burden of satisfying the first four steps by a preponderance of the evidence. *Id.*

At step five, "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citing 20 C.F.R. § 404.1520(a)(4)(v); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). To meet this burden, "the Commissioner must produce evidence that establishes that 'work exists in significant numbers in the national economy that [the claimant] can do.'" *Id.* (quoting 20 C.F.R. § 404.1560). The Commissioner uses the RFC, as well the testimony of vocational experts and specialists, to establish that work exists in significant numbers in the national economy that the claimant is capable of performing. *Id.* "[E]ntitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy." *Id.* (internal quotation marks omitted).

    c. **The ALJ's Evaluation of Meck**

At step one, the ALJ found that Meck was not engaged in a substantial gainful activity because she last worked in 2008. (Tr. at 61). At step two, the ALJ found that Meck had "severe impairments" including "obesity, seizure disorder, migraines, degenerative changes of the lumbar spine, mild demineralization of the left shoulder, bilateral carpal tunnel syndrome, mild obstructive sleep apnea, hypertension, peripheral arterial disease,

fibromyalgia, asthma, systemic lupus erythematosus by history, recurrent deep vein thrombosis, intellectual disability, major depressive disorder, neurocognitive disorder, post-traumatic stress disorder (PTSD), panic disorder, and dissociative disorder." (*Id.*). Further, the ALJ found that these impairments would "significantly limit [Meck's] ability to perform basic work activities" (*Id.*). At step three, the ALJ found that Meck "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (*Id.* at 61-62).

At step four, the ALJ determined that Meck has the RFC "to perform light work," although "[s]he can never kneel, crouch, crawl, or climb ropes, ladders or scaffolds . . . [s]he can have no exposure to unprotected heights or hazardous moving machinery. [She] would need an option to sit for 15 minutes after every 60 minutes of standing or walking." (*Id.* at 64-65). The ALJ found Meck was able to:

> occasionally operate foot controls . . . balance, stoop, [] climb ramps and stairs, reach, handle, finger, and feel with both upper extremities . . . tolerate occasional exposure to weather, extreme heat, extreme cold, humidity, wetness, atmospheric conditions, and vibration . . . tolerate moderate noise intensity levels . . . tolerate occasional exposure to light brighter than that typically found in an indoor work environment. She can understand, remember, and carry out simple instructions and make simple work-related decisions. She can sustain an ordinary routine without special supervision. (*Id.*).

Finally, at step five the ALJ determined that, "[c]onsidering [Meck's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Meck] can perform." (*Id.* at 70). Accordingly, the ALJ found that Meck is not disabled within the meaning of the Social Security Act. (*Id.* at 71).

### d. Analysis

> i. The ALJ's RFC determination adequately addresses the "severe" impairment of Meck's migraine headaches.

Meck contends that the RFC determination made by the ALJ is not supported by substantial evidence because the RFC failed to fully account for the limitations her migraine headaches have on her ability to perform work-like activities. (ECF No. 14 at 6).

First, Meck contends that the ALJ's RFC determination failed to account for the limitations her migraine headaches have on her ability to perform work-like activities because the RFC does not account for "the primary impact of [her] migraine headaches— that when she has them, she is off task for considerable periods of time due to the pain until the migraine subsides." (*Id.*). Meck reported in 2017 that she would experience migraine headaches daily on a pain level of 6-7 out of 10. (ECF No. 16 at 5). Meck argues that the recurring instances, lengthy duration, and painful severity of her migraine headaches impact her ability to work. (ECF No. 18 at 3). Relying on vocational expert ("VE") testimony that a person with Meck's limitations "could perform light work as an office helper, routing clerk, and a photocopy machine operator,"(ECF No. 16 at 13-14), and that "missing more than 1 day of work per month and/or being off task between 10% and 20% of the workday precludes the ability to engage in sustained competitive employment," (ECF No. 14 at 7), Meck contends that the ALJ should have accounted for the time Meck is off task dealing with her migraine headaches in his RFC determination. (*Id.* at 7-8).

The Commissioner responds that the ALJ properly considered all relevant factors when making its RFC determination and made appropriate accommodations in response. (ECF No. 16 at 15). Further, the Commissioner contends that the ALJ's RFC determination did not include an off-task limitation because the ALJ properly determined that the

migraines from which Meck suffered could be controlled through medication. (*Id.* at 16). The Commissioner argues that Meck was "consistently prescribed the same medication at the same dosage levels . . . [which] strongly suggests that these medications worked to control [Meck's] symptoms." (*Id.* at 16). Lastly, the Commissioner responds that the ALJ properly excluded other alleged limitations of Meck, including her ability to remain on task, because such assertions were not supported by the medical record. (*Id.* at 17).

It is the ALJ's responsibility to determine a plaintiff's RFC. *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008). In assessing a claimant's RFC, the ALJ is to consider all of a claimant's medically determinable impairments, as well as all of the relevant evidence pertaining to those impairments, including medical records, statements from medical sources, and descriptions by the claimant of her limitations. 20 C.F.R. §§ 404.1545(a)(3)–(4). "[T]he ALJ's RFC determination must include all of Plaintiff's limitations, but only those limitations that are fully credible, or supported by objective evidence, need be included." *Guzman v. Berryhill*, No. CV 17-199, 2018 WL 2984961, at *1 (W.D. Pa. June 14, 2018) (quoting *Pettway v. Colvin*, No. 14-6334, 2016 WL 5939159, at *8 (E.D. Pa. Apr. 8, 2016)).

The ALJ properly accounted for Meck's migraine headaches in its RFC determination. First, in its RFC determination, the ALJ noted the medical evidence demonstrating Meck suffered from a history of migraine headaches. (Tr. at 64-70). The ALJ then discussed Meck's treatment, medication, and consultations with different medical professionals including Pamela Geary, CRNP, and Dr. Suzanne Blasko. (*Id.* at 69). Lastly, the ALJ discussed the duration, severity, and instances of Meck's headaches, her habits with

respect to treating her headache symptoms, and whether Meck was compliant with treatment measures given to her by her care providers. (*Id.* at 65-67). Taken together, the Court finds that there is substantial evidence to support the ALJ's RFC determination.

    ii. **There is substantial evidence that the ALJ adequately addressed Meck's mental and social limitations.**

Second, Meck contends that the RFC was erroneous because the ALJ did not properly consider the persuasiveness of two professional opinions regarding Meck's mental and social limitations. (ECF No. 14 at 11). Meck cites opinions of various mental health professionals who evaluated her, including Gina Lombardi, M.A., who diagnosed Meck with "mild intellectual disability, unspecified depressive disorder, and PTSD," finding Meck had moderate limitations on her ability to understand complex instructions, interact with others, and make complex decisions. (*Id.* at 11-12). Meck's therapist, April Hyatt, further "assessed a poor prognosis" and noted Meck's inability to focus on her work "or tolerate interaction with others". (*Id.* at 12-14). Her evaluation with Tracey Cook at the Sexual Assault and Violent Crime Center produced similar findings, emphasizing Meck's "traumatic childhood" and its impact on her ability to manage her anger and maintain focus. (*Id.* at 14). During a psychological evaluation with Edward Haberman, Ph.D., Meck was diagnosed with PTSD, and during a psychiatric evaluation with Dr. Harold Sternlicht, she was diagnosed with multiple personality disorder. (*Id.* at 14-15). Meck argues the ALJ did not adequately weigh the medical opinions of Hyatt and Cook under 20 C.F.R. § 416.920c(b)(2), 20 C.F.R. § 416.920c(b)(3), and 20 C.F.R. § 416.920c(c)(3)-(c)(5). (*Id.* at 17).

The Commissioner argues that the ALJ properly weighed the medical evidence consistent with the narrow definition of "medical opinion" in the regulation, which

establishes a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitation or restriction". (ECF No. 16 at 18 (quoting 20 C.F.R. § 416.913(a)(2)). In weighing multiple medical opinions, the Commissioner argues that the ALJ was required to look at a variety of factors with the most important being "supportability and consistency." (*Id.* at 19). The Commissioner found, and stated in her decision, that the assessments of Hyatt and Cook were "not persuasive because the degree of limitations assessed are not consistent with evidence [of other medical opinions on the record], including mental status examinations. (Tr. 64). Specifically, the Commissioner emphasizes that the assessments of Hyatt and Cook were properly treated as unpersuasive because they were inconsistent with the opinions of Dr. Nulton and other physicians who regularly found that although Meck suffered the various aforementioned mental health issues, her "medications improved her symptoms and [ ] did not cause side effects." (*Id.* at 21). The Commissioner argues that the ALJ need not further evaluate the other factors contained in 20 C.F.R. 416.920c(c)(2)-(5) because the ALJ did not find Hyatt's questionnaire or Cooks' assessment were equally supported by the record. (ECF No. 16 at 20). Further, the Commissioner argues that this Court is not permitted to re-weigh the evidence provided in the absence of the ALJ's explanation of why certain opinions were not treated persuasively. (*Id.*).

The ALJ stated that "[Meck's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Meck's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record". (Tr. at 66). The ALJ went on to explain that:

> [t]he mental status examination findings are generally within normal limitations, including [Meck's] content of speech and circumstance, intensity, and affect. Her symptoms improve with medication with no noted side effects. For example, her anxiety and mood are better controlled with medication. Her depression was noted to be stable in November 2018. She reported being a little agitated, but good in January 2019, as well as eating and sleeping well. (*Id.* at 67).

The ALJ's findings that Meck could perform light work in conditions with decreased social interactions, minimal decision-making, consistent pace, and low-stress environment adequately conveyed Meck's moderate mental and social limitations. (*Id.*). The Court finds that the ALJ's RFC determination is supported by substantial evidence and that the ALJ properly accounted for Meck's medical limitations and social limitations using record evidence she found to be persuasive.

### IV.   Conclusion

Based on the foregoing, the Court finds that the Commissioner's decision should be affirmed. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MILISSA MARIE MECK, | ) | Case No. 3:20-cv-149 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this 30th day of November, 2021, upon consideration of Plaintiff's Motion for Summary Judgment and brief in support (ECF Nos. 13, 14), Defendant's Motion for Summary Judgment and brief in support (ECF Nos. 15, 16), Plaintiff's Reply Brief (ECF No. 18), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (ECF No. 13) is **DENIED. IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (ECF No. 15) is **GRANTED.**

BY THE COURT:

_____
**KIM R. GIBSON
UNITED STATES DISTRICT JUDGE**